NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

KYLE J., *Appellant,*

*v.*

DEPARTMENT OF CHILD SAFETY, T.J., J.J., *Appellees.*

No. 1 CA-JV 18-0088
FILED 9-20-2018

Appeal from the Superior Court in Mohave County
No. L8015JD201607018
The Honorable Derek C. Carlisle, Judge

**AFFIRMED**

COUNSEL

Erika A. Arlington Esq. PC, Flagstaff
By Erika A. Arlington
*Counsel for Appellant*

Arizona Attorney General's Office, Tucson
By Cathleen E. Fuller
*Counsel for Appellee Department of Child Safety*

---

**MEMORANDUM DECISION**

Judge Paul J. McMurdie delivered the decision of the Court, in which Presiding Judge Jennifer B. Campbell and Judge Kent E. Cattani joined.

---

**M c M U R D I E**, Judge:

¶1        Kyle J. ("Father") appeals the juvenile court's order terminating his parental rights to his two children. For the following reasons, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

¶2        Father and Patricia J. ("Mother") are the biological parents of T.J., born in April 2010, and J.J., born in September 2012 (the "Children"). Mother's biological child C.P. also lived in the family home with Mother, Father, and the Children.[1] Father, who is 35 years old, has an admitted history of abusing methamphetamine since he was 16 years old. The Department of Child Safety ("DCS") previously investigated Mother and Father in 2011 after receiving reports the couple was neglecting C.P. and T.J., in addition to using and selling drugs.

¶3        In April 2016, DCS investigated allegations that Mother and Father were abusing methamphetamine and marijuana, causing them to sleep for inordinate amounts of time, and leaving 12-year-old half-sibling C.P. to supervise the Children. Father admitted marital problems with Mother caused them to fight in the presence of the Children and contributed to his relapse in 2016.[2] Shortly after the initial investigation, Mother left the home and Father asked the Children's maternal grandmother to temporarily care for the Children. In April 2016, Father entered a voluntary 90-day agreement with DCS placing the Children in

---

[1]     Mother and C.P. are not parties to this appeal. Mother voluntarily relinquished her parental rights to all three children.

[2]     The amount of time Father was clean before this relapse is unknown, but Father reported he had refrained from using methamphetamine for up to four years in the past.

maternal grandmother's care. Mother would irregularly appear between May 2016 and December 2017.

¶4 DCS petitioned for dependency in June 2016, alleging the Children were dependent regarding Father due to neglect, a history of substance abuse, and a history of domestic violence with Mother in the presence of the Children. In July 2016, after Father tested negative for substances for three weeks, DCS returned C.P. and the Children to him in an in-home dependency. Father was required to call the drug testing line daily and test as directed. In mid-July, Father again tested positive for methamphetamine and stopped calling into the testing line. DCS moved to change the Children's physical custody to their maternal grandmother and the court granted the motion in August 2016.

¶5 Father tested positive for methamphetamine on at least eight occasions through September 2016, even while claiming he had not used the drug in six months. He eventually completed a 28-day rehabilitation program in March 2017, and had not used methamphetamine since January 31, 2017. After completing the program, Father moved in with his parents and began working as a handyman and painter for his parents' various businesses. Father was compliant with DCS programs and regularly visited with the Children while they were under their maternal grandmother's care. However, Father continued to use alcohol in his "sobriety."

¶6 In June 2017, DCS moved to terminate Father's parental rights based on: (1) neglect; (2) a history of chronic substance abuse; (3) mental deficiency; and (4) time-in-care. *See* Ariz. Rev. Stat. ("A.R.S.") §§ 8-533(B)(3), (8)(c). After a two-day hearing, the juvenile court terminated Father's parental rights, finding DCS proved each ground by clear and convincing evidence, and termination was in the Children's best interests. Father timely appealed, and we have jurisdiction pursuant to § 8-235(A) and Arizona Rule of Procedure for the Juvenile Court 103(A).

## DISCUSSION

¶7 To terminate a parent-child relationship, the juvenile court must find at least one statutory ground for severance under § 8-533(B) by clear and convincing evidence. *Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 22 (2005). The court must also find severance is in the child's best interests by a preponderance of the evidence. *Id.* We review the court's severance determination for an abuse of discretion and will affirm unless no reasonable evidence supports the court's findings. *Mary Lou C. v. ADES*, 207 Ariz. 43, 47, ¶ 8 (App. 2004). The juvenile court "is in the best position to

weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts." *ADES v. Oscar O.*, 209 Ariz. 332, 334, ¶ 4 (App. 2004).

## I.    Sufficient Evidence Supports the Juvenile Court's Order Terminating Father's Parental Rights Based on Chronic Substance Abuse.

**¶8**      Father claims there was insufficient evidence to establish chronic substance abuse because at the time of trial he had not tested positive for methamphetamine in a year. Therefore, he argues the abuse was not "continuing."

**¶9**      Under § 8-533(B)(3), a parent's rights may be terminated if "the parent is unable to discharge parental responsibilities because of . . . a history of chronic abuse of dangerous drugs . . . and there are reasonable grounds to believe that the condition will continue for a prolonged indeterminate period." Chronic substance abuse is long-lasting, but "need not be constant." *Raymond F. v. ADES*, 224 Ariz. 373, 377, ¶ 16 (App. 2010). A child's interest in permanency must prevail over a parent's uncertain battle with drugs. *Id.* at 379, ¶ 29.

**¶10**      Father's history of drug abuse indicates an addiction that has persisted over a long period, and one that is lingering. Father's battle with methamphetamine had continued for nearly twenty years at the time of the hearing. Although he had not used methamphetamine for 12 months, he had relapsed after extended periods of sobriety in the past. "Father's temporary abstinence from drugs . . . does not outweigh his significant history of abuse or his constant inability to abstain." *Raymond F.*, 224 Ariz. at 379, ¶ 29; *see also Jennifer S. v. DCS*, 240 Ariz. 282, 288, ¶ 25 (App. 2016) (mother's abstinence from methamphetamine for months prior to hearing does not outweigh significant history of drug abuse or her demonstrated inability to remain sober). Moreover, children should not be forced to wait for their parent to overcome an addiction. *Jennifer S.*, 240 Ariz. at 287, ¶ 17; *Raymond F.*, 224 Ariz. at 378, ¶ 25. Accordingly, the court did not err by concluding that Father suffered from chronic substance abuse.

**¶11**      Having determined that Father suffers from chronic drug use, we next look to determine if that use has affected Father's ability to parent. *Raymond F.*, 224 Ariz. at 378–79, ¶ 19. Termination under § 8-533(B)(3) does not require a finding that the parent is unable to discharge *any* parental responsibilities. Instead, a trial judge has flexibility in considering the unique circumstances of each case to determine the parent's ability to

discharge his or her parental responsibilities. *Maricopa County Juv. Action No. JS-5894*, 145 Ariz. 405, 408–09 (App. 1985).

¶12 C.P. told DCS Mother and Father "like to make hookahs and smoke tobacco out of them." He related that Mother and Father were "tired and stressed out so they fight a lot." C.P. reported that during one incident, Father had thrown and broken a glass. When C.P. cleaned up the glass, he cut the bottom of his foot. C.P. further reported the family did not have enough food and he often went without food so that his siblings would have some. C.P. also stated his parents were behind closed doors often, leaving him to provide supervision and basic care for his siblings. C.P. felt that he could not leave his younger siblings alone with Mother and Father. When DCS interviewed T.J., she also responded that she had seen Mother and Father "smoke hookah with a lighter." She claimed that Father liked to sleep and that she was unable to wake him when he slept.

¶13 Father maintains he has improved his parenting skills and the above described conditions no longer apply as he is living with his parents and he has been drug-free for a significant period. The evidence does support Father's contention, but it does not change the fact that abusing drugs has affected his ability to parent. Father has a history of abusing methamphetamine to cope with stress. He stated that the most recent relapse that led to the Children's initial removal was triggered by the increased stress in his marriage. While Father's abstinence from methamphetamine is commendable, it is in the context of being in a less stressful environment as the result of his parents' supporting him financially by providing him with employment and a home. When the Children were returned only to Father's care in July 2016, he began using methamphetamine again. Accordingly, the court did not abuse its discretion by finding that Father was not equipped to handle the stress of raising two children as a single parent.

¶14 Father also argues the court's reliance on his continued alcohol use was error as it did not show a prolonged *abuse* of alcohol. While the mere use of alcohol may not be sufficient to meet the statutory requirement for severance, Father's continued alcohol use demonstrated that he failed to understand the meaning of "sobriety" and was not taking the necessary steps to control his substance abuse issues long-term.

¶15 Finally, we must determine if there is sufficient evidence to support the court's determination that there are reasonable grounds to believe that the condition will continue for a prolonged indeterminate period. Father submitted to a psychological evaluation with Dr. James Thal.

Father reported he began using methamphetamine in high school, stating that it "mellow[ed] [him] out." Father reported that he "love[d]" methamphetamine and that it motivated him, but admitted it was a "horrible drug." He further described himself as addicted to alcohol and stated that he was a "lush" but he did not "need it all the time." He reported his relapse was due to the stress he was facing with "[Mother] leaving him and the tasks assigned to him by DCS."

¶16        On intelligence testing, Father scored in the intellectually disabled range. Dr. Thal opined that Father's understanding of the demands of caring for two children seemed marginal at best. Dr. Thal diagnosed Father with an intellectual disability, adjustment disorder with depressed mood, attention deficit hyperactivity disorder, methamphetamine-use disorder, and alcohol-use disorder. Although Dr. Thal opined that the substance-use disorders were in remission, he concluded that Father was at a very high risk for relapse, due to his "very marginal" understanding of recovery and leading a sober lifestyle, and the fact that he had "repeatedly expressed his affinity for drugs and alcohol, while maintaining that he was using in the context of excessive feelings of pressure and stress." He further concluded that "with two young children in his care and his marginal skills, [Father's] family life could be anything but stress-free."

¶17        Father also submitted to a neuropsychological evaluation with Dr. Stephen Gill in April 2017. Father informed Dr. Gill that he had been sober from methamphetamine for one hundred days, but he also admitted that he was still drinking alcohol. Dr. Gill diagnosed Father with an intellectual disability, methamphetamine-abuse disorder, alcohol-abuse disorder, attention deficit hyperactivity disorder, depressive disorder, generalized anxiety disorder, and dependent personality traits. Dr. Gill testified that continued alcohol use lessens inhibitions and increases the potential for Father to relapse with his drug of choice, methamphetamine. He opined that Father would need to commit to a more comprehensive drug treatment program to reduce the likelihood of a relapse. Dr. Gill opined that given Father's neurodevelopmental limitations, he would be unlikely to be able to demonstrate minimally adequate parenting skills in the foreseeable future. He concluded Father would not be competent "in learning new skills to minimally parent his children and to independently run a minimally safe and hygienic household."

¶18        Given Father's history of substance abuse, including his history of relapsing after periods of sobriety and the experts' opinions, there was sufficient evidence for the court to conclude that Father's substance

abuse is continuing, prevents him from discharging his parental responsibilities, and would do so for an indeterminate period.[3]

## II. The Juvenile Court Did Not Err by Finding Termination of Father's Parental Rights was in the Children's Best Interests.

¶19 Once the court finds a parent unfit under at least one statutory ground for termination, "the interests of the parent and child diverge," and the court proceeds to balance the unfit parent's "interest in the care and custody of his or her child . . . against the independent and often adverse interests of the child in a safe and stable home life." *Kent K.*, 210 Ariz. at 286, ¶ 35. "[A] determination of the child's best interest must include a finding as to how the child would benefit from a severance *or* be harmed by the continuation of the relationship." *Maricopa County Juv. Action No. JS-500274*, 167 Ariz. 1, 5 (1990). Our supreme court has stated "[t]he best interest requirement may be met if . . . the petitioner proves that a current adoptive plan exists for the child, or even that the child is adoptable." *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 3–4, ¶ 12 (2016) (alterations in original) (quoting *Mary Lou C.*, 207 Ariz. at 50, ¶ 19).

¶20 Father contends DCS failed to show that the Children would be harmed if returned to Father to live with him in his parents' home. A finding that severance is in the best interests of the Children does not require that the court find that the Children will be harmed from the continued relationship with the parent, a finding that severance will benefit the Children is sufficient. *See JS-500274*, 167 Ariz. at 6. ("[P]etitioner must prove an affirmative benefit to the child resulting from termination. For example, petitioner might prove that there is a current adoptive plan for the child *or* that the child will be freed from an abusive parent.") (citation omitted).

¶21 Reasonable evidence in the record supports the juvenile court's finding that severance was in the Children's best interests. The court found that the Children were "in a placement that [was] willing to adopt

---

[3] Because we find the juvenile court had sufficient evidence to terminate Father's parental rights based on the continuing substance abuse ground, we need not consider whether sufficient evidence supports termination on other grounds. *See Crystal E. v. DCS*, 241 Ariz. 576, 577–78, ¶ 5 (App. 2017) (this court can affirm a severance on any one of the grounds found by the superior court).

them and that termination would free them up for adoption and provide them permanency in connection with this case."

## CONCLUSION

**¶22** For the foregoing reasons, we affirm the juvenile court's order terminating Father's parental rights to T.J. and J.J.

